IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RANDY BLAKE PATTERSON, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIV-20-355-R |
| Vs. | ) | Case No. _____ |
| | ) | |
| THE BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY OF OKLAHOMA, | ) | |
| RAYMOND A. COHLMIA, D.D.S., KEVIN | ) | |
| L. HANEY, D.D.S., AND REBECCA A. | ) | |
| HUGHES, D.D.S., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Randy Blake Patterson, M.D., for his causes of action against Defendants the Board of Regents of the University of Oklahoma, Raymond A. Cohlmia, D.D.S., Kevin L. Haney, D.D.S., and Rebecca A. Hughes, D.D.S. ("Individual Defendants"), states as follows:

## THE PARTIES

1. Plaintiff is an individual who currently resides in Oklahoma City, Oklahoma, and is domiciled in and a citizen of the State of Oklahoma.

2. The Defendant Board of Regents of the University of Oklahoma ("Board of Regents") is an Oklahoma constitutional state agency whose principal place of conducting its academic affairs and business is Norman, Cleveland County, State of Oklahoma.

3. Defendant Raymond A. Cohlmia ("Cohlmia") is the Dean of the University of Oklahoma's College of Dentistry located in Oklahoma City, Oklahoma County, State of Oklahoma, and a resident of the State of Oklahoma.

4. Defendant Rebecca Hughes ("Hughes") was at all times herein mentioned an Instructor and faculty member of the University of Oklahoma's College of Dentistry.   She currently resides in Tulsa, Oklahoma.

5. Defendant Kevin L. Haney ("Haney") was at all times herein mentioned a faculty member of the University of Oklahoma's College of Dentistry.  He currently resides at Norman, Oklahoma.

6. Each natural person is sued in his individual capacity.

7. The acts complained of herein occurred in the City of Oklahoma City, Oklahoma County, State of Oklahoma.

## JURISDICTION AND VENUE

8. This action is brought under 42 U.S.C. § 1983, and the Federal Due Process Clause of the Fourteenth Amendment to the United States Constitution.

9. Jurisdiction is based upon 28 U.S.C. § 1331 (Federal question).

10. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate his claims arising under state law.

11. Venue is proper in this district under 28 U.S.C. § 1391(b).

## FACT ALLEGATIONS

12. Plaintiff is a medical doctor duly licensed to practice medicine in the State of Oklahoma.

13. Plaintiff received his medical degree from the University of Oklahoma College of Medicine in 2013 and his Masters of Public Health Degree from the University of Oklahoma in 2015.

14. Plaintiff was the only student in his dental class that had earned a medical degree and based on information and belief further alleges that he was the only student in the College of Dentistry with an M.D. degree.

15. Plaintiff's professional career objective was and is to become an oral maxillofacial surgeon.

16. In order to achieve his professional objective of becoming an oral maxillofacial surgeon, it is necessary to obtain a degree as a Doctor of Dental Surgery.  Many oral maxillofacial surgery training programs also require completion of a Doctor of Medicine degree.

17. Plaintiff applied for admission as a dental student at several dental colleges nationwide including those at Columbia University, the University of Pennsylvania, and the University of Oklahoma.

18. Plaintiff was accepted at each of the three dental colleges but selected the University of Oklahoma because of a representation that he would be admitted into its oral maxillofacial surgical program upon receipt of his Doctor of Dental

Surgery degree even though the other two colleges of dentistry are more prestigious and ranked higher by peers.

19. As a result of Plaintiff's medical studies at the University of Oklahoma College of Medicine and his Masters of Public Health degree from the University of Oklahoma Health Sciences Center, Plaintiff incurred substantial student loan debt, and in his pursuit of a Doctor of General Dental degree at the University of Oklahoma College of Dentistry ("OUCOD" or "COD") incurred more student loan debt and encountered hostility as a result of his status as a medical doctor.

20. Students at the OUCOD are required to wear white clinical laboratory coats, and monogrammed color-designated scrubs with their names identifying them on the front.

21. For the white coat ceremony, Plaintiff designated "Blake Patterson, M.D." to be monogrammed on his white coat and Defendant Haney altered Plaintiff's request before the white coat ceremony and further issued a directive to the company that monogrammed the white coats and scrubs that no titles could be monogrammed on scrubs and white coats for students in the COD.

22. When Defendant Haney took these actions, there was no policy in the student handbook precluding the display of a title. However, Plaintiff was intimidated into having his scrubs and coat re-made so that only Plaintiff's name was displayed without the title of M.D.

23. Thereafter Defendant Haney caustically referred to Plaintiff as "Mr. Patterson" both verbally and in writing for the duration of Plaintiff's enrollment at the COD.

24. Plaintiff determined that there was expressed jealousy by certain OUCOD faculty who disliked medical doctors that marked him in his class and cast him in an unfavorable light.

25. Although basic science classes could have been waived, Plaintiff was required by the OUCOD to take the basic sciences classes he had already taken and successfully completed while a student at the University of Oklahoma College of Medicine.  One of those classes, anatomy, was a class that Plaintiff had instructed for physician assistant students and other healthcare professionals at the University of Oklahoma Health Sciences Center.

26. Defendants Cohlmia and Haney knew Plaintiff had taken and passed these basic science classes as a medical student and that there was a written policy in the student handbook that provides for waivers of course requirements that would be redundant.  Plaintiff was nevertheless required to take these classes, and he paid his tuition and fees to retake these courses that he passed as a first-year medical student.

27. The recommendation of Professor Daniel L. O'Donoghue, a David Ross Boyd Professor in the OU College of Medicine, and Faculty members in the Department of Oral Maxillofacial Surgery, was to grant Plaintiff advanced placement in the OUCOD because of his successful completion of the study of medicine and earned Medical Doctor degree, and the basic sciences curricular overlap between the two degree programs. The Chair of the Department of Oral Maxillofacial Surgery and Program Director advocated to have Plaintiff advanced in the DDS-curriculum and

met with Defendants Cohlmia and Haney in an effort to waive duplicative courses Plaintiff had already completed in medical school.

28. However, Defendant Haney denied the advanced placement and required Plaintiff to repeat anatomy even though he knew that the first year of dental school is virtually identical to the first year of medical school at the University of Oklahoma in terms of course work.

29. Plaintiff's grade point average for his first year of dental studies at OUCOD was 3.4 on a 4.0 grade scale.

30. In academic year 2016/17, year two of dental school, Plaintiff was enrolled in several classes that required demonstrated hand skill proficiency.

31. During Plaintiff's second year in dental school, Plaintiff took a course called RP7125 (Removable Prosthodontics) that required, *inter alia*, Plaintiff to do a denture wax-up even though dentists no longer manually prepared dentures and most dental colleges have eliminated this course requirement.

32. The course syllabus for RP7125 provided that the denture wax-up was 17.5% of the course grade.

33. Plaintiff's instructor in RP7125 was Defendant Hughes, a first-year instructor and 2015 graduate of OUCOD.

34. Plaintiff received a failing grade on the final wax-up practical exam and as a result was assessed a failing grade for the entire course by Defendant Hughes.  The RP7125 Syllabus provided that the wax-up represents 17.5% of the overall course grade and further stated that if it was not passed the student fails the course

6

irrespective of the course grade and regardless of how well the student performed in the other 82.5% of the class. Plaintiff achieved an overall passing grade as set out in the Syllabus but was assessed a failing course grade because of his failure of the wax-up.

35. The other students in RP7125 who also failed the final practical exam were afforded the opportunity to remedy their failed grade at no academic penalty, except for Plaintiff.

36. Instead Plaintiff was denied the equitable remedy, received a "F" grade in the course that was entered on his permanent academic transcript, immediately placed on academic probation, and was not promoted to the spring academic term.

37. Plaintiff petitioned the course instructor, Defendant Hughes, the Department of Prosthodontics, Defendant Cohlmia, the Dean of COD, and the Promotion Committee for an independent study, and to be assigned a faculty mentor to satisfy his alleged deficient laboratory skill that was the basis of his failing grade.

38. Defendant Cohlmia denied Plaintiff's petition citing inadequate resources and faculty coverage to honor this request.

39. Despite Defendants' false assertions to the contrary, the COD possessed adequate resources and Faculty coverage to provide tutoring to interested International dental students (who pay substantially higher tuition and fees than the Plaintiff and other traditional students in the DDS-Program at the COD who are offered private tutoring of their hand skills). One such course, advertised on the school's public website, offers week-long one-on-one tutoring with an assigned COD Faculty

mentor in hand skills and bench preparation for a nominal cash fee of $4,000.00. Common practice was for COD faculty to remedy a failed hand skill or laboratory procedure on the part of these International students on an ad hoc basis.

40. As a consequence, Plaintiff sought mentorship elsewhere and in 2017 enrolled in a Bench Prep Review hosted at the University of California at Los Angeles ("UCLA") via Vinmar Solutions LLC. UCLA was and is a highly rated nationally recognized College of Dentistry.

41. Plaintiff presented to his Bench Prep Review instructor his wax-up denture work product that Defendant Hughes judged as "clinically deficient" for evaluation. This instructor with 35 years of experience as an Instructor in UCLA's Department of Prosthodontics evaluated Plaintiff's work product, determined it to be satisfactory, and declared it fine for the Prosthodontics Clinic at UCLA.

42. Plaintiff completed all assigned laboratory work at UCLA, fabricated a new complete denture under timed conditions, and was judged proficient by the UCLA Faculty Mentor.

43. Upon his return to the College of Dentistry from Los Angeles in June, 2017, Plaintiff presented the work product to COD RP7125 Course Instructor Nancy Jacobsen for faculty grading.

44. Professor Jacobsen graded Plaintiff's denture and he achieved a score of 78%, and was adjudged "clinically acceptable".

45. During the summer term in 2017, at the COD, Plaintiff achieved a 4.0 grade point average and in the fall of academic year 2017/18 had a 3.4 term grade point average.

46. Plaintiff retook RP7125 at the COD and again was failed on the same wax-up laboratory procedure that caused him to fail the course previously.

47. Plaintiff petitioned the COD, the Department of Prosthodontics, the Dean, and the Professional Development Advisory Committee to accept his prosthodontics course work at UCLA as a suitable proxy for his alleged laboratory deficiency that had been evaluated as clinically acceptable at UCLA and by OU RP7125 Course Instructor Jacobsen.

48. The COD refused to accept Plaintiff's demonstrated proficiency as suitable proxy for what it subjectively deemed to be a deficient laboratory procedure.

49. Although the COD accepts coursework submitted by foreign dental students studying in the COD's Advanced Standing Program in International Dentistry ("ASPID") program as suitable proxy of the same, Defendants refused the coursework submitted by Plaintiff from a peer institution (UCLA) accredited by the Council on Dental Accreditation (CODA). Many of these International dental students came to the COD from dental colleges of less rigor and less stringent requirements than those at the COD.

50. As before, the COD refused Plaintiff's request to participate in a remediation opportunity although it permitted all other students in its class of 2020 who failed

the final practical examination in RP7125 to remedy their failed course grades at no academic penalty.

51. Two students in the Class of 2020 who failed their remediation of the wax-up, and the RP7125 course overall, were advanced into the Spring Term without academic penalty or sanction. However, Plaintiff's failed grade in that class caused him to be placed on academic probation the year before, made to repeat an entire academic year, and then got dismissed from the Program.

52. At his grade hearing before the Dean's Council on January 4, 2018, Plaintiff challenged the policy relative to his failed RP7125 grade, the college's use of disparate remedies for other students similarly situated, and the remediation policy.  When Dr. Jacobsen at the hearing made statements supportive of Plaintiff and damaging to the COD, she was precluded from further testimony at that hearing.

53. The witnesses and exhibits the Plaintiff submitted to prove that his failed grade in RP7125 was capricious were similarly precluded from evidence at the hearing before the Dean's Council.

54. Following the hearing before the Dean's Council, Defendant Haney was designated by the COD as Plaintiff's "Student Advocate" for the grade hearing before the Professional Development Advisory Committee, ("PDAC"), and although that Committee voted 4 to 1 to retain Plaintiff in the DDS-Program and advance him to third-year status, Defendant Haney was derelict in his appointed duty as Student Advocate as he failed to inform the Plaintiff of the Council's

decision that he be retained, later became an obstructionist when Plaintiff requested he produce the PDAC Meeting Minutes, writing that the results were "irrelevant to his grade appeal", which was untrue.

55. Despite the 4-1 Faculty majority vote, Defendant Cohlmia refused to accept the PDAC recommendation and made the decision instead to terminate Plaintiff.

56. In April, 2018, despite Plaintiff's high cumulative grade point average, a passing score of a National Board of Dental Education Part I examination, and passing all other clinical courses with practical laboratory requirements that demonstrated his hand skills, the COD sought the dismissal of Plaintiff.

57. Before Plaintiff's dismissal on April 18, 2018, Defendant Cohlmia assured Plaintiff that if he entered into an Appeal Waiver Agreement with the COD he would have an unencumbered academic record, could voluntarily withdraw from the COD, and could enroll in any dental college to complete his dental studies.

58. When this representation was made by Defendant Cohlmia, Plaintiff reasonably relied on it because of his acceptance at colleges of dentistry more prestigious than the COD before he made the decision to attend the COD.

59. The representation made by Defendant Cohlmia was false in that no college of dentistry has been willing to accept Plaintiff as a student because his academic record is encumbered with the failing grades in RP7125.

60. Immediately after Plaintiff entered into an Appeal Waiver Agreement with the COD, the Department of Prosthodontics changed the policy in dispute for the Plaintiff's failing grade RP7125, providing the exact remediation concessions

11

Plaintiff had requested as equitable relief and was denied in two successive academic years.  RP7125 Course Instructor Defendant Hughes resigned or was terminated from the University and did not return to the College to teach the course the following year.

61. Although Plaintiff has been denied admission to a college of dentistry that  is a prerequisite to become an oral maxillofacial surgeon, Plaintiff was Matched into a surgical internship at Columbia University's General Surgery Residency.  Plaintiff received excellent clinical performance evaluations as a surgical resident on over 150 surgical procedures requiring fine hand motor skills.

62. In August 2019, Plaintiff also sat for an examination known as the CBSE administered by the National Board of Medical Examiners on behalf of the American Association of Oral Maxillofacial Surgery.  This examination is given to third-year and fourth-year dental students as an admission criteria for oral surgery programs and is an objective, standardized written examination.  Plaintiff's score on the exam eclipsed the national average score among prospective oral maxillofacial surgery trainees by a substantial margin, demonstrating his preparedness for the specialty.

63. Another student in Plaintiff's class at the COD failed her National Examination Part I four times before passing it on the fifth occasion although the policy in the student handbook states that the failure of National Boards after three attempts results in a dismissal from the program.  Unlike Plaintiff, the policy was waived for that student and no academic sanctions were imposed.

64. Other of Plaintiff's classmates failed the NBDE Part I examination in excess of three times or failed to pass by the fall term of the third year as mandated by the student handbook.  However, none were sanctioned academically or dismissed from the COD as per policy.

65. Although Plaintiff passed the NBDE Part I examination on his first attempt and well in advance of the fall passage deadline, and has performed adequately as a student at every level of his professional education, unlike some of his classmates, written policies were arbitrarily and capriciously applied to him.

66. In order to achieve his academic and professional goal of becoming an oral maxillofacial surgeon, Plaintiff has incurred student debt in excess of $400,000.00. Without a dental degree, Plaintiff will never become an oral maxillofacial surgeon despite his academic record and demonstrated skills in general surgery at one of the America's top surgical residency programs.

67. Plaintiff's status as a medical doctor caused the Defendants to have a bias and animus towards him as a dental student and to enforce policies in a discriminatory, arbitrary, and capricious manner.

**FIRST CAUSE OF ACTION – VIOLATION OF 14TH AMENDMENT SUBSTANTIVE DUE PROCESS AGAINST DEFENDANTS COHLMIA, HANEY, AND HUGHES BY WAY OF 42 U.S.C. § 1983**

68. Plaintiff incorporates paragraphs 1 through 67 by reference as though set forth in full herein.

69. The dismissal of a student by a public educational institution is a deprivation within the Fourteenth Amendment to the United States Constitution.

70. The Defendants are constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by due process rights under the Fourteenth Amendment to the United States Constitution.

71. Plaintiff also has protected liberty and/or property interests in his investment in the program at the COD, his professional reputation, his earning ability and potential, and the value of his education and privacy.

72. An exclusion from a public university, in whole or in part, for failure to comply with academic standards is within the protection of the Fourteenth Amendment to the United States Constitution.

73. Plaintiff's right to substantive due process was also denied by the failure of Defendants Cohlmia, Haney, and Hughes to apply fair and impartial procedural policies and to treat Plaintiff similarly to other students at the COD through multiple stages of Plaintiff's time at the COD. Plaintiff was impermissibly treated differently than similarly-situated female students and students with a different place of national origin. Plaintiff also was impermissibly treated differently because of his attainment of an M.D. Plaintiff was not afforded the opportunity to be heard by an impartial and disinterested tribunal in an adjudicative process where the procedures employed are appropriate for his interests at stake. Plaintiff's right to due process was also denied by the commission of academic policy violations by Defendants Cohlmia, Haney, and Hughes. All of these items together show that the processes employed by Defendants Cohlmia, Haney, and Hughes

were fundamentally unfair, were arbitrary, capricious, lacked a rational basis, and shock the conscience.

74. Each of the foregoing due process violations, as well as Plaintiff's dismissal constituted deprivations of Plaintiff's substantive due process rights under the Fourteenth Amendment to the United States Constitution.

75. The actions of of Defendants Cohlmia, Haney, and Hughes were the product of arbitrary state action rather than conscientious, careful, and deliberate exercises of professional judgment. Furthermore, Defendants Cohlmia, Haney, and Hughes's actions were based on nonacademic and constitutionally impermissible reasons.

76. Defendants Cohlmia, Haney, and Hughes acted under color of state law.

77. Defendants Cohlmia, Haney, and Hughes knew or should have known that their actions complained of herein violated clearly established federal rights.

78. Defendants Cohlmia, Haney, and Hughes worked individually and/or in conspiracy with one another to violate Plaintiff's rights complained of herein.

79. Plaintiff has incurred damages due to the substantive due process violations including but not limited to paid tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and lost enjoyment of life.

## SECOND CAUSE OF ACTION – VIOLATION OF 14TH AMENDMENT PROCEDURAL DUE PROCESS AGAINST DEFENDANTS COHLMIA, HANEY, AND HUGHES BY WAY OF 42 U.S.C. § 1983

80. Plaintiff incorporates paragraphs 1 through 79 by reference as though set forth in full herein.

81. The dismissal of a student by a public educational institution is a deprivation within the Fourteenth Amendment to the United States Constitution.

82. The Defendants are constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by due process rights under the Fourteenth Amendment to the United States Constitution.

83. Plaintiff also has protected liberty and/or property interests in his investment in the program at the COD, his professional reputation, his earning ability and potential, and the value of his education and privacy.

84. An exclusion from a public university, in whole or in part, for failure to comply with academic standards is within the protection of the Fourteenth Amendment to the United States Constitution.

85. Plaintiff's right to procedural due process was also denied by the failure of Defendants Cohlmia, Haney, and Hughes to apply fair and impartial procedural policies and to treat Plaintiff similarly to other students at the COD through multiple stages of Plaintiff's time at the COD. Plaintiff was impermissibly treated differently than similarly-situated female students and students with a different place of national origin. Plaintiff also was impermissibly treated differently because of his attainment of an M.D. Plaintiff was not afforded the opportunity to be heard by an impartial and disinterested tribunal in an adjudicative process where the procedures employed are appropriate for his interests at stake. Plaintiff's right to due process was also denied by the commission of academic policy violations by Defendants Cohlmia, Haney, and Hughes. All of these items together

show that the processes employed by Defendants Cohlmia, Haney, and Hughes were fundamentally unfair, were arbitrary, capricious, lacked a rational basis, and shock the conscience.

86. Plaintiff was not afforded an appropriate level of process. The level of process that Plaintiff sought would have been applicable to his asserted liberty and property interests.

87. The appropriate level of process and additional safeguards that Plaintiff seeks would have greatly impacted Plaintiff's liberty and property interests and would have had a high probative value in the overall process of Plaintiff's time at the COD.

88. The additional fiscal and administrative burdens on the Defendants stemming from Plaintiff's sought after appropriate level of process, if any, would be minimal.

89. Each of the foregoing due process violations as well as Plaintiff's dismissal constituted deprivations of Plaintiff's procedural due process rights under the Fourteenth Amendment to the United States Constitution.

90. Defendants Cohlmia, Haney, and Hughes acted under color of state law.

91. Defendants Cohlmia, Haney, and Hughes knew or should have known that their actions complained of herein violated clearly established federal rights.

92. Defendants Cohlmia, Haney, and Hughes worked individually and/or in conspiracy with one another to violate Plaintiff's rights complained of herein.

93. Plaintiff has incurred damages due to the procedural due process violations including but not limited to paid tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and lost enjoyment of life.

**THIRD CAUSE OF ACTION – VIOLATION OF 14TH AMENDMENT EQUAL PROTECTION AGAINST THE INDIVIDUAL DEFENDANTS BY WAY OF 42 U.S.C. § 1983**

94. Plaintiff incorporates paragraphs 1 through 93 by reference as though set forth in full herein.

95. The Defendants are constrained to recognize a student's legitimate entitlement to a public education as a property interest and fundamental right which is protected by due process rights under the Fourteenth Amendment to the United States Constitution.

96. Plaintiff also possesses fundamental rights in his investment in the program at the COD, his professional reputation, his earning ability and potential, and the value of his education and privacy.

97. Plaintiff's fundamental rights were violated in a multitude of connected conduct. Defendants Cohlmia, Haney, and Hughes failed to apply fair and impartial procedural policies and to treat Plaintiff similarly to other students at the COD through multiple stages of Plaintiff's time at the COD. Plaintiff was impermissibly treated differently than similarly-situated female students and students with a different place of national origin. Plaintiff also was impermissibly treated differently because of his attainment of an M.D. Plaintiff was not afforded the

opportunity to be heard by an impartial and disinterested tribunal in an adjudicative process where the procedures employed are appropriate for his interests at stake. Plaintiff's right to due process was also denied by the commission of academic policy violations by Defendants Cohlmia, Haney, and Hughes. All of these items together show that the processes employed by Defendants Cohlmia, Haney, and Hughes were fundamentally unfair, were arbitrary, capricious, lacked a rational basis, and shock the conscience.

98. Plaintiff was intentionally treated differently than similarly-situated students who were of a different gender and place of national origin.

99. Defendants Cohlmia, Haney, and Hughes acted under color of state law.

100.    Defendants Cohlmia, Haney, and Hughes knew or should have known that their actions complained of herein violated clearly established federal rights.

101.    Defendants Cohlmia, Haney, and Hughes worked individually and/or in conspiracy with one another to violate Plaintiff's rights complained of herein.

102.    Plaintiff has incurred damages due to the procedural due process violations including but not limited to paid tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and lost enjoyment of life.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT AGAINST THE BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA

103.    Plaintiff incorporates paragraphs 1 through 102 as though set forth in full herein.

104.      Plaintiff entered into a contract with Defendant Board of Regents when he offered to become a student and applied for admission to the COD and he was accepted as a student in the COD.

105.      Defendant Board of Regents accepted Plaintiff's offer to become a student in its COD and admitted Plaintiff to its College of Dentistry class of 2019.

106.      The policies and procedures the COD as set forth in the student handbook and other academic policy documents created the duties that Plaintiff and the COD owed to one another.

107.      Plaintiff performed the terms and provisions of his agreement with the COD.

108.      Defendant Board of Regents breached the agreement by its failure to apply its dismissal policies uniformly and in good faith, and as a direct result of its breach, Plaintiff has lost tuition and fees, and wages that he would have earned from a doctor of dental surgery degree that would have enabled him to become an oral maxillofacial surgeon, all to his damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

## FIFTH CAUSE OF ACTION – PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE AGAINST DEFENDANT COHLMIA

109.      Plaintiff incorporates paragraphs 1 through 108 as though set forth in full herein.

110.      Defendant Cohlmia represented to Plaintiff that if he signed the Appeal Waiver agreement on April 30, 2018, Plaintiff would not have an encumbered

academic record and that he would be admitted to another college of dentistry to complete his dental education.

111.    Plaintiff detrimentally relied on Defendant Cohlmia's representations and executed the Appeal Waiver agreement.

112.    Defendant Cohlmia knew or reasonably should have known that Plaintiff would rely on his representations made from his position of authority as Dean of the COD.

113.    Defendant Cohima should be equitably estopped from denying the aforesaid representations he made to Plaintiff regarding the Appeal Waiver agreement inducements.

114.    Plaintiff has incurred damages due the foregoing detrimental reliance on Defendant Cohlmia, including without limitation, paid tuition and fees, lost wages, value of professional service and reputational damages.

## **PRAYER FOR RELIEF**

1.  Plaintiff prays that this Court enter judgment for him as to all claims set forth in each cause of action against the respective Defendants; and

2.  That this Court issue an award, in excess of Seventy-Five Thousand Dollars $75,000.00, for any and all present and future damages incurred and owed due to Defendants' actions in an amount to be determined by the jury that includes economic loss, non-economic loss for mental anguish and emotional distress, sleeplessness, anxiety, injury to professional reputation, lost enjoyment of life and punitive damages against the individually named Defendants as well as payment for the amount that

Defendant Board of Regents of the University of Oklahoma was unjustly enriched for the tuition and fees Plaintiff paid as a student in its COD, and any and other payment for services performed or judgment accrued to its COD as a result of Plaintiff's attendance together with his costs, a reasonable attorney's fee, and for such other and further relief that is deemed just and proper.

Respectfully submitted,

WARD & GLASS, LLP

/S/ Stanley M. Ward
Stanley M. Ward, OBA#9351
Geoffrey A. Tabor, OBA#32880
Barrett T. Bowers, OBA#30493
1601 36th Avenue, N.W.
Norman, Oklahoma   73072
(405) 360-9700  /  (405) 360-7902 (fax)
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**