## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RANDY BLAKE PATTERSON, M.D.** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-355-R** |
| | ) | |
| **STATE OF OKLAHOMA, *ex rel.*, BOARD** | ) | |
| **OF REGENTS OF THE UNIVERSITY OF** | ) | |
| **OKLAHOMA, RAYMOND A. COHLMIA,** | ) | |
| **D.D.S., KEVIN L. HANEY, D.D.S., AND** | ) | |
| **REBECCA A. HUGHES, D.D.S.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court are four motions to dismiss, Doc. Nos. 8–11, filed by Defendants Board of Regents of the University of Oklahoma, Raymond Cohlmia, Kevin Haney, and Rebecca Hughes. Plaintiff Randy Patterson has responded in opposition to each motion, Doc. Nos. 14–17, and Defendants have each replied, Doc. Nos. 18–21. Upon review of the parties' submissions, the Court finds as follows.

## BACKGROUND AND FACTS

Plaintiff Randy Patterson ("Dr. Patterson") received his medical degree in 2013 and his Masters of Public Health in 2015, both from the University of Oklahoma. Doc. No. 1, ¶ 13. Pursuing the prerequisites for a career in oral maxillofacial surgery, Dr. Patterson enrolled in the University of Oklahoma College of Dentistry ("College of Dentistry") in 2015, intending to receive a Doctor of Dental Surgery ("D.D.S."). *Id.* ¶ 18.

1

The white coat ceremony is a tradition welcoming incoming students prior to their start of dental school. Prior to the College of Dentistry's white coat ceremony in 2015, Dr. Patterson requested the designation "M.D." be monogrammed beside his name on his coat. *Id.* ¶ 21. After Dr. Patterson submitted the request, Defendant Haney ("Professor Haney") altered it by removing the M.D. designation and directing the monogram company that "no titles could be monogrammed … for students in the C.O.D." *Id.* This began a series of disputes between Dr. Patterson and the faculty and administration at the College of Dentistry.

At the start of the 2015–16 academic term, Dr. Patterson attempted to have waived basic science classes he had previously taken as a medical student, pursuant to a written policy in the student handbook. *Id.* ¶ 26. His requests were denied, even though he had previously served as an instructor for one of the courses. *Id* ¶ 25.

During the 2016–17 academic term, Dr. Patterson's second year in the D.D.S. program, he enrolled in Defendant Hughes's ("Professor Hughes") Removable Prosthodontics course. *Id.* ¶ 31. Passing Removable Prosthodontics requires passing a graded denture wax-up practical exam. *Id.* ¶ 34. Professor Hughes awarded Dr. Patterson a failing grade on his denture wax-up, resulting in Dr. Patterson failing the course. *Id.* The failing grade halted Dr. Patterson's progress towards his D.D.S., and in response, he petitioned Professor Hughes, Defendant Cohlmia ("Dean Cohlmia"), and a faculty committee for an independent study and a faculty mentor to satisfy his "alleged deficient laboratory skill that was the basis of his failing grade." *Id.* ¶ 37.

In 2017, after the faculty members denied Dr. Patterson's request for an independent study or faculty mentor, he attended a review course at the University of California–Los Angeles ("UCLA"), hoping to improve his prosthodontics skills. *Id.* ¶ 40. UCLA judged Dr. Patterson's course work to be "satisfactory," therefore, he returned to the College of Dentistry and attempted to retake Removable Prosthodontics. *Id* ¶ 41. However, Dr. Patterson ultimately failed the denture wax-up, and the Removable Prosthodontics course, a second time. *Id.* ¶ 46.

After both failed denture wax-ups, Dr. Patterson alleges he was the only student who was not afforded an opportunity to remedy his failed grade without an academic penalty. *Id.* ¶ 35. In fact, Dr. Patterson alleges two students in his second Remedial Prosthodontics course failed wax-up remediation attempts, yet "were advanced into the Spring Term without academic penalty or sanction." *Id.* ¶ 51.

Prior to the start of the 2017–18 academic year, Dr. Patterson attempted to utilize his UCLA course work as a proxy for Removable Prosthodontics at the College of Dentistry. *Id.* at ¶ 48. The College of Dentistry denied his request, deeming the UCLA procedure "deficient." *Id.* Dr. Patterson then petitioned the faculty for a grade hearing before the Dean's Council, which took place on January 4, 2018. *Id.* ¶ 51.

Following the January 4, 2018 Dean's Council hearing, the College of Dentistry designated Defendant Haney ("Professor Haney") as Dr. Patterson's Student Advocate for an additional grade hearing before the Professional Development Advisory Committee ("PDAC"). *Id.* ¶ 54. Dr. Patterson alleges that, during the PDAC hearing, the faculty voted 4-1 to reinstate him into the D.D.S. program. *Id.* ¶ 55. However, on April 18, 2018, Dean

Cohlmia did not accept the PDAC recommendation and decided to dismiss Plaintiff from the D.D.S. program. *Id.* On April 30, 2018, Dr. Patterson signed an Appeal Waiver Agreement with the College of Dentistry, believing—through his conversations with Dean Cohlmia—that he would then voluntarily withdraw from the College of Dentistry, but with an unencumbered academic record. *Id.* ¶ 57.

However, Dr. Patterson's academic record is still encumbered by the failed Removable Prosthodontics courses, and therefore he is unable to seek admittance at another college of dentistry and cannot continue his pursuit of a career as an oral maxillofacial surgeon. *Id.* ¶ 61. He sought relief by filing a complaint with this Court on April 16, 2020. Each defendant subsequently filed motions to dismiss each cause of action.

## STANDARD OF REVIEW

In considering Defendants' Motions to Dismiss under Rule 12(b)(6), the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. The motion is properly granted when the Complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's Complaint must contain enough "facts to state a claim to relief that is plausible on its face," *id.* at 570, and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555 (citations omitted). The Court must accept all the well-pleaded allegations of the Complaint as true and must construe the allegations in the light most favorable to Plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the Court need not accept as true those allegations that are conclusory in nature. *Erikson v.*

4

*Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

To the extent any of the Defendants' motions implicate Rule 12(b)(1), because no Defendant asserts a factual attack against the complaint, the Court applies "the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." *Muscogee v. Oklahoma Tax Commission*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

## MOTION TO DISMISS BY DEFENDANT STATE OF OKLAHOMA, *ex rel.*, BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA

Dr. Patterson files only one claim against the University: Breach of Contract. Doc. No. 1, ¶¶ 103–108. The University argues that under the Eleventh Amendment it is immune from suit because it is an agent of the state whose immunity has not been abrogated by Congress, or otherwise waived. Doc. No. 8, pp. 2–3. Dr. Patterson concedes that the University is a state agency that would normally be entitled to Eleventh Amendment immunity but argues that the University waived that immunity through contract. Doc. No. 18, pp. 2–3. The only issue for the Court to decide, then, is whether the University has waived its immunity through contract.

> Waiver of sovereign immunity must be knowing and voluntary, and the "test for determining whether a State has waived its immunity from federal jurisdiction is a stringent one." *Coll. Sav. Bank,* 527 U.S. at 675, 119 S.Ct. 2219 (internal quotation marks omitted) … A state can likewise enter into a contract that waives its Eleventh Amendment immunity to suits relate to the contract. *See, e.g., Watson v. Texas,* 261 F.3d 436, 442 (5th Cir. 2001).

5

> . . . . When a . . . document purportedly waives a state's Eleventh Amendment immunity, we "will give effect to [the waiver] only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." [*Port Authority Trans-Hudson Corp. v.*] *Feeney,* 495 U.S. [299] at 305, 110 S.Ct. 1868 (brackets and internal quotation marks omitted).

*Pettigrew v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety*, 722 F.3d 1209, 1213–14 (10th Cir. 2013).

Here, Dr. Patterson bears the burden of demonstrating that the University waived its immunity. *See, e.g., Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (noting that the plaintiff, as "the party asserting jurisdiction[,] bears the burden of proving that sovereign immunity has been waived.").

Dr. Patterson does not satisfy this burden. He asserts that he entered into contracts with the University wherein the University waived its immunity from suit in federal court, but he does not provide the Court with any specific contract or contractual provision, much less a provision that waived the University's immunity. Doc. No. 14, pp. 5–6. The University is therefore protected from suit by their sovereign immunity and Dr. Patterson's claim against it must be dismissed for lack of jurisdiction.

## **MOTION TO DISMISS BY DEFENDANT REBECCA HUGHES**

Dr. Patterson brings three § 1983 claims against Professor Hughes. Hughes argues that Dr. Patterson's claims against her are barred by the statute of limitations and that she is entitled to qualified immunity. Doc. No. 11, pp. 4–17.

"State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims." *Panicker v. City of Okla. City*, No. 16-6114, 3 (10th

6

Cir. Aug. 23, 2016) (quoting *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557 (10th Cir. 1999)). Under Oklahoma law, the statute of limitations applicable to general injury claims is two years. *Id.* Time accrues from the moment Plaintiff "knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1980). Dismissal is appropriate where a complaint shows on its face that the applicable statute of limitations has expired. *Aldrich v. McCulloch Props.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

According to the complaint, Professor Hughes violated Dr. Patterson's Fourteenth Amendment rights when she:

i)   Wrongfully gave Dr. Patterson a failing grade on a final practical exam in the 2016–2017 academic year, Doc. No. 1, ¶¶ 33–34, 41–42;

ii)  Allowed female and international students who were not M.D.s to remedy their failing grades, but denied the same opportunity to Dr. Patterson, an American male with an M.D., *id.* ¶¶ 35, 73, 85, 97–98; and

iii) Refused to support Dr. Patterson's petition to receive a faculty mentor to satisfy his alleged deficiency, the basis of his failing grade, in the 2016–17 academic year.[1]

Dr. Patterson filed his complaint on April 16, 2020—more than two years after Professor Hughes allegedly committed the above-mentioned acts in the 2016–2017

---

[1] "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008). In Dr. Patterson's complaint, a number of the allegations implicate the College of Dentistry, generally, *see, e.g.,* Doc. No. 1, ¶¶ 48, 49, 50. The Court will not speculate as to which Defendant Dr. Patterson is referring to whenever he alleges that the "C.O.D." or "Defendants" did a certain act. *See id.* Unless specifically stated otherwise, the Court therefore will not consider those allegations in ruling on each of the motions to dismiss.

7

academic year. Therefore, Dr. Patterson's claims against Hughes are barred by the two-year statute of limitations applicable to § 1983 claims.

Dr. Patterson contends, however, that the continuing violations doctrine saves his untimely claims against Professor Hughes. This doctrine applies "when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 672 (10th Cir. 2016).

> The utility of the … [doctrine] lies in the fact that as long as one of the separate wrongful acts contributing to the collective conduct occurs within the filing period, a court may consider the *entire* time period—including those separate acts falling outside the filing period—for the purposes of determining liability."

*Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019), *cert. denied sub nom. City of Trinidad, Colorado v. Hamer*, 140 S. Ct. 644 (2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (emphasis in original)). "An important caveat to the continuing violation doctrine, however, is that it is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Id.* (internal quotation marks and citations omitted).[2]

---

[2] The Tenth Circuit has not held that the continuing violation doctrine applies to § 1983 claims. *Parker v. Bourdon*, 800 F. App'x 654, 657 (10th Cir. Jan. 30, 2020). The Circuit has, however, assumed its applicability to § 1983 claims in a number of cases. *See, e.g., Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011). At least one judge in this district found it applicable in the § 1983 context. *See Castillo v. Bobelu*, 1 F. Supp. 3d 1190, 1200 (W.D. Okla. 2014), (applying the continuing violation doctrine to an Eight Amendment claim under § 1983 after noting: "The First, Second, Third, Sixth, Seventh and Ninth Circuits have held that, at least in certain circumstances, the continuing violation doctrine "applies to cases under § 1983.") *aff'd in part, appeal dismissed in part on other grounds sub nom. Castillo v. Day*, 790 F.3d 1013 (10th Cir. 2015), and *aff'd sub nom. Castillo v. Jones-Cooper*, 660 F. App'x 614 (10th Cir. 2016). Accordingly, the Court proceeds with the understanding that the doctrine applies to § 1983 claims.

First, Dr. Patterson does not allege an unlawful act by Professor Hughes after the 2016–2017 academic year. Instead, he argues that the continuing violation doctrine saves his claims because, under the doctrine, each of Professor Hughes's acts is connected through the same discriminatory animus. Doc. No. 17, p. 11. Even if that were true, again, Dr. Patterson's complaint does not allege that Professor Hughes committed any unlawful acts after the 2016–2017 academic year.

Dr. Patterson also argues that the continuing violation doctrine saves his claims against Dr. Hughes because Professor Hughes's acts are connected to the subsequent acts of her co-Defendants, which extend beyond April 16, 2018. Specifically, Dr. Patterson argues that the Defendants all acted "in concert" and thus, their alleged unlawful acts should be viewed together as one continuing violation of the law. *Id.* However, Dr. Patterson does not direct the Court to facts in his complaint that demonstrate Professor Hughes acted in concert with the other Defendants. Further, the only allegation in the complaint connecting Professor Hughes's acts to acts committed by the other two Defendants is the allegation that the Defendants "worked individually and/or in conspiracy with one another to violate Plaintiff's rights." Doc. No. 1, ¶¶ 78, 92, 101.[3] The Court will not credit such a conclusory allegation. *See Erikson*, 263 F.3d at 1154–55.

Professor Hughes's actions may have played a part in leading to Dr. Patterson's dismissal from the College of Dentistry on April 18, 2018. However, as noted above, the

---

[3] While this conspiracy language is present within his complaint, Dr. Patterson states, in response to each Defendant's motion to dismiss, that he is not asserting a claim of conspiracy against the Defendants. *E.g.*, Doc. No. 17, pp. 21–22. Accordingly, the Court need not address any argument the Defendants make in favor of dismissing Dr. Patterson's alleged conspiracy claim.

continuing violation doctrine is "triggered by continual unlawful acts, not by continual ill effects from the original violation." *Hamer*, 924 F.3d at 1098. At bottom, the continuing violations doctrine does not save Dr. Patterson's untimely § 1983 claims against Professor Hughes.

In the alternative, Dr. Patterson argues that the limitations period should be equitably tolled for his claims against Professor Hughes because the untimeliness was due to Dr. Patterson's pursuit of administrative remedies within the College of Dentistry. Doc. No. 17, pp. 9–13.

As an initial matter, Dr. Patterson was required to exhaust his administrative remedies only for his procedural due process claim. *See Pinder v. Mitchell*, 658 F. App'x 451, 453 (10th Cir. 2016). There is no exhaustion requirement for his substantive due process claim or his equal protection claim because constitutional violations that are actionable under § 1983 are complete when the wrongful action is taken. *Id.*; *Zinerman v. Burch*, 494 U.S. 113, 125 (1990). Procedural due process claims, however, require the exhaustion of state remedies because the alleged violation is not a property deprivation, but a property deprivation without due process of law. *Zinerman*, 494 U.S. at 125. Thus, the deprivation for a procedural due process claim is not complete "until the State fails to provide due process," which cannot be determined until a plaintiff exhausts his administrative remedies. *Id.*

Nevertheless, "state law governs . . . tolling issues in § 1983 cases." *Roberts v. Barreras,* 484 F.3d 1236, 1240 (10th Cir. 2007) (citations omitted). Equitable tolling is permitted in Oklahoma in two circumstances. *Alexander v. Oklahoma,* 382 F.3d 1206, 1217

(10th Cir. 2004). The first circumstance is the existence of a "legal disability," which Oklahoma courts have applied "only for plaintiffs whose competency is impaired or who have not reached the age of majority." *Id.* (citations omitted). Second, "if defendants engage in 'false, fraudulent, or misleading conduct' calculated to lull plaintiffs into sitting on their rights, the limitations period may not be triggered." *Id.* (citations omitted).

Dr. Patterson does not have a legal disability, nor does he allege that Professor Hughes fraudulently lulled him into sitting on his rights. Accordingly, Dr. Patterson's § 1983 claims against Professor Hughes do not warrant equitable tolling under Oklahoma law. Therefore, the claims are time-barred and subject to dismissal.[4]

## **MOTION TO DISMISS BY DEFENDANT KEVIN HANEY**

Dr. Patterson brings three § 1983 claims against Defendant Dr. Haney ("Professor Haney"). Like Professor Hughes, Professor Haney argues that Dr. Patterson's claims against him are barred by the two-year statute of limitations applicable to § 1983 claims and that he is entitled to qualified immunity. Doc. No. 10, pp. 4–17.

According to the complaint, Dr. Patterson alleges Professor Haney:

i)     Refused to allow Dr. Patterson to have "M.D." monogrammed on his white coat for the College of Dentistry's white coat ceremony, or on his scrubs, Doc. No. 1, ¶¶ 21–22;

ii)    Referred to Dr. Patterson as "Mr. Patterson" for the duration of his enrollment at the College of Dentistry—presumably instead of referring to him as "Dr. Patterson", id. ¶ 23;

iii)   Harbored jealousy of Dr. Patterson's status as a medical doctor, id. ¶ 24;

---

[4] In light of the Court's disposition on the statute of limitations issue, the Court need not address Professor Hughes's qualified immunity argument.

iv)    Refused to allow Dr. Patterson to waive certain classes, id. ¶ 26;

v)    Denied Dr. Patterson advanced placement, id. ¶ 28;

vi)    Failed to fulfill his duty as Dr. Patterson's Student Advocate when he did not inform Dr. Patterson of the Professional Development Advisory Committee's ("PDAC") decision to retain Dr. Patterson, and when he didn't give Dr. Patterson the PDAC meeting minutes as requested, id. ¶ 54.

The timeline within the complaint suggests that the above conduct occurred before April 2018. Dr. Patterson did not file this action against Professor Haney until April 16, 2020. In his briefing before the Court, Dr. Patterson does not point to any action by Professor Haney during or after April 16, 2018 that would serve as a factual basis for his claims. Accordingly, Dr. Patterson's § 1983 claims against Professor Haney are time-barred.

As with Professor Hughes's claims, Dr. Patterson argues here that the continuing violation doctrine saves his claims because each of Professor Haney's acts is connected through the same discriminatory animus. Doc. No. 16, p. 12. Even if that were true, Dr. Patterson does not allege that Dr. Haney committed any unlawful acts during or after April 2018.

Dr. Patterson also argues, as above, that the continuing violation doctrine saves his claims against Professor Haney because his acts are connected to the subsequent acts of his co-Defendants, which occurred after April 16, 2018. He argues that the Defendants acted "in concert" and thus, their alleged unlawful acts should be viewed together as one continuing violation of the law. *Id.* In his briefing, however, Dr. Patterson does not allege facts indicating Professor Haney acted in concert with the other Defendants. *Id.* Upon the

Court's own review, the only allegations in the complaint connecting Professor Haney to any of his co-Defendants include: (1) that Drs. Haney and Cohlmia attended a meeting with a Professor Daniel L. O'Donoghue wherein the Professor advocated for Dr. Patterson's advanced placement and (2) that the Defendants "worked individually and/or in conspiracy with one another to violate Plaintiff's rights." Doc. No. 1, ¶¶ 27, 78, 92, 101. The first allegation does not demonstrate that Professor Haney's conduct set forth above was connected to other alleged wrongful conduct by his co-Defendants extending beyond April 16, 2018. The second is conclusory.

Dr. Patterson also argues that the limitations period should be equitably tolled for his claims because the untimeliness was due to his pursuit of administrative remedies with the college. Doc. No. 16, pp. 13. However, as above, Dr. Patterson does not meet either criteria for equitable tolling under Oklahoma law.  Accordingly, Dr. Patterson's § 1983 claims against Professor Haney do not warrant equitable tolling and are time-barred and subject to dismissal.[5]

## MOTION TO DISMISS BY DEFENDANT RAYMOND COHLMIA

Dr. Patterson brings three § 1983 claims against Defendant Raymond Cohlmia ("Dean Cohlmia"), in addition to a state-law tort claim for promissory estoppel/detrimental reliance. Like his co-Defendants, Dean Cohlmia argues that Dr. Patterson's §1983 claims against him are barred by the applicable two-year statute of limitations and that he is entitled to qualified immunity. Doc. No. 9, pp. 4–14. Dean Cohlmia also argues that Dr.

---

[5] As above, considering the Court's disposition on the statute of limitations issue, the Court need not address Dr. Haney's qualified immunity argument.

Patterson's tort claim must be dismissed because it fails to state a claim upon which relief may be granted. *Id.* at 17–18.

According to the complaint, Dean Cohlmia violated Dr. Patterson's Fourteenth Amendment rights when he:

i) Refused to allow Dr. Patterson to waive certain classes during the 2015–2016 academic year, Doc. No. 1, ¶ 26;

ii) Denied Dr. Patterson's efforts to obtain an independent study or be assigned a faculty mentor to satisfy his alleged deficient laboratory skill during the 2016–2017 academic year, *id.* ¶¶ 37–38,

iii) Terminated Dr. Patterson from the College of Dentistry and rejected the PDACs recommendation that he be retained, *id.* at ¶ 55.

Dean Cohlmia argues that even assuming these allegations are true, his conduct all occurred before April 2018 and Dr. Patterson's claims, asserted April 16, 2020, over two years later, are time-barred. Doc. No. 9, pp. 4–6. In response, Dr. Patterson argues that Dean Cohlmia dismissed him from the College of Dentistry on April 18, 2018, and therefore, under the continuing violation doctrine, Dean Cohlmia's conduct—both inside and outside the limitations period—is considered a single violation of the law. Doc. No. 15, p. 12; *see also Hamer*, 924 F.3d at 1100 ("[T]he 'continuing violation' doctrine . . . tethers conduct from both inside and outside the limitations period into one single violation that, taken as a whole, satisfies the applicable statute of limitations.").

Dr. Patterson alleges that Dean Cohlmia dismissed him, and that the dismissal decision occurred on April 18, 2018. *Id.* ¶ 57. Dr. Patterson filed the complaint on April 16, 2020, *id.*, within the two-year statute of limitations window. It is thus not clear from the face of the complaint that the applicable statute of limitations expired. *Aldrich*, 627

14

F.2d at 1041 n.4. Therefore, for purposes of Dean Cohlmia's motion to dismiss, Dr. Patterson's briefing before the Court and the allegations in the complaint, the Court construes the complaint as alleging an unlawful act by Dean Cohlmia after April 16, 2018, and thus, Dr. Patterson's claims arising from the dismissal decision may proceed.

Dean Cohlmia alternatively argues that dismissal is warranted because he is entitled to qualified immunity. Qualified immunity protects government officials, in their individual capacities, from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant invokes a qualified immunity defense, the plaintiff must show that the defendant violated a statutory or constitutional right, and that the right was clearly established. The Court may consider the qualified immunity test in either order. *See Panagoulakos v. Yazzie*, 741 F.3 1126, 1129 (10th Cir. 2013).

To show that the defendant violated a statutory or constitutional right, a plaintiff must demonstrate that his complaint sufficiently alleges such a violation. *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). This analysis is much like the Court's general analysis under Rule 12(b)(6) where the Court must determine whether the plaintiff has stated a claim upon which relief can be granted.

To show that a law is "clearly established," a plaintiff must identify precedent that places the "constitutional question beyond debate." *Yeasin v. Durham*, 719 F. App'x 844, 850 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). A plaintiff must identify "a Supreme Court or Tenth Circuit decision on point, or the clearly

15

established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cortez v. McCauley*, 478 F.3d 1108, 1114–15 (10th Cir. 2007) (quotation marks and citation omitted). The relevant precedent must be particularized to the facts of this case, making it sufficiently clear such that every reasonable official would have known that the defendant's actions would violate the plaintiff's rights. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

Here, Dr. Patterson alleges that Dean Cohlmia's actions violated his Fourteenth Amendment rights to substantive due process, procedural due process, and equal protection. The Court addresses each claim in turn.

A. *Substantive Due Process*

Dr. Patterson alleges Dean Cohlmia's acts violated his substantive due process rights under the Fourteenth Amendment.

The Tenth Circuit addressed substantive due process involving dismissal from universities and explained that students have a property interest in their continued education, *Harris v. Blake*, 798 F.2d 419, 424 (10th Cir. 1986), but required students to prove that the decision to expel … was arbitrary, lacked a rational basis, or shocked the conscience. *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003). Further, the Supreme Court has stated that "the 'shocks the conscience' standard is likely satisfied where the conduct was "intended to injure in some way unjustifiable by any government interest." *Cty of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

In addressing a substantive due process claim in an academic setting in *Gossett v. Oklahoma ex rel. Bd. of Regents of Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001), the

16

Tenth Circuit held that when a Plaintiff presents evidence "sufficient to create a fact issue" as to whether a decision "was motivated by impermissible gender discrimination rather than based on an exercise of professional judgment as to … academic ability," then summary judgment is improper. *Id.* at 1182. The plaintiff in *Gossett* submitted evidence that female nursing students were given opportunities for enhancing their academic performance, but that male students were not, justifying the court's conclusion that a fact issue arose as to whether the dismissal was unconstitutional. *Id.* In *Rainwater v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, No. CIV-19-382-R, 2020 WL 499698, at *4 (W.D. Okla. Jan. 30, 2020), this Court denied Defendant's motion to dismiss a substantive due process claim when the Plaintiff alleged that the decision to terminate her from her graduate program was not "poor performance but rather … the result of [a] failure to accommodate Plaintiff's disability, animosity toward Plaintiff when she requested an accommodation, and … [a] failure to inform only Plaintiff that a vital class had been relocated."

Dr. Patterson alleges that, along the lines of the defendants in *Gossett* and *Rainwater*, Dean Cohlmia violated his rights to substantive due process when he:

i)      Refused to allow Dr. Patterson to waive certain classes during the 2015–2016 academic year and did not accept his UCLA course as a proxy for Removable Prosthodontics at the College of Dentistry, Doc. No. 1, ¶ 26;[6]

ii)     Denied Dr. Patterson's request to obtain an independent study or a faculty mentor to satisfy his alleged deficient laboratory skill during the 2016–2017 academic year, *id.* ¶¶ 37–38;

---

[6] As discussed above, even the allegations prior to April 16, 2018 are considered against Dean Cohlmia because of the continuing violations doctrine.

iii)     Terminated Dr. Patterson from the College of Dentistry, rejecting the PDACs recommendation that Dr. Patterson be retained and misrepresenting the removal of a grade encumbrance when signing the Appeal Waiver Agreement, *id.* ¶¶ 55, 57.[7]

While courts have recognized a property interest in a student's place in graduate school programs, *see Harris v. Blake,* 798 F.2d 419, 422 (10th Cir. 1986), Dr. Patterson does not have a property interest in receiving "an independent study" or being "assigned a faculty mentor to satisfy his alleged deficient laboratory" during his pursuit of a graduate degree. Doc. No. 1, ¶ 37. While such allegations may serve as evidence of the motivation for Dr. Patterson's dismissal, the only issue is whether Dean Cohlmia's decision to terminate Dr. Patterson, despite the 4-1 PDAC vote to retain him, violates his substantive due process rights.

Dr. Patterson argues that Dean Cohlmia's decision to terminate him from the College of Dentistry was the result of his national origin, gender, and status as an M.D. Doc. No. 1, ¶ 73. Dean Cohlmia responds that the Plaintiff fails to make a showing of personal bias because he does not state enough facts to display a motivation for Dean Cohlmia's bias in his termination decision.[8] Doc. No. 9, pp. 7–8. However, Dr. Patterson alleges that evidence of Dean Cohlmia's arbitrary dismissal decision exists from his prior decision to deny Dr. Patterson's request to waive courses he had previously taken, one of which he had actually taught. Doc. No. 1, ¶¶ 25–6. Dr. Patterson also alleges that Dean

---

[7] Again, the Court does not speculate as to which defendant Dr. Patterson is referring to whenever he alleges that the "COD" or "Defendants" did a certain act, *supra* Note 1, therefore, the Court only considers allegations specifically against Dean Cohlmia in ruling on Dean Cohlmia's motion to dismiss.

[8] Defendants also argue that Dr. Patterson voluntarily withdrew from the College of Dentistry. Doc. No. 9, p. 7. At the motion to dismiss stage, Plaintiff's statement of facts is taken as true, and in the complaint, Dr. Patterson alleges that he was dismissed by Dean Cohlmia on April 18, 2018, Doc. No. 1, ¶¶ 55, 57, and that he entered into an agreement to waive his right to appeal the dismissal decision, not to voluntarily withdraw from the C.O.D. Doc. No. 1, ¶ 57.

Cohlmia overrode a 4-1 faculty PDAC vote in favor of retaining Dr. Patterson, and, after his dismissal and voluntary signing of an Appeal Waiver Agreement, Dean Cohlmia has yet to remove the grade encumbrances which induced Dr. Patterson to sign the agreement. Doc. No. 1, ¶¶ 55, 57, 59.

Taken together, in light of *Gossett*, the facts alleged state a claim for the deprivation of Dr. Patterson's substantive due process rights. Additionally, Dr. Patterson cites *Gossett* as the "Tenth Circuit decision on point," *Cortez*, 478 F.3d at 1114–15, to allege that those rights were clearly established at the time of his dismissal. The Court agrees that on April 16, 2018, the law in the Tenth Circuit's *Gossett* decision was clearly established, and thus, Dean Cohlmia is not entitled to dismissal on the basis of qualified immunity, and therefore Dr. Patterson's § 1983 substantive due process claim may proceed.

### B.  Procedural Due Process

While substantive due process protects an individual's property or liberty interests for certain reasons, procedural due process requires a state to employ fair procedures when depriving one of that interest. *Reid v. Paulter*, 36 F.Supp.3d 1067, 1136 (D.N.M. 2014) citing *Lewis*, 523 U.S. at 845–6. A university can satisfy its procedural due process obligations "if the student is given prior notice of the deficiencies in his academic performance and if the challenged decision is 'careful and deliberate.'" *Board of Curators v. Univ. of Missouri v. Horowitz,* 435 U.S. 78, 85 (1978); *see also Trotter v. Regents of Univ. of N. Mex.,* 219 F.3d 1179, 1184–85 (10th Cir. 2000).

In *Horowitz*, the Supreme Court explained that there is a "significant difference between the failure of a student to meet academic standards and the violation by a student

of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal." *Horowitz*, 435 U.S. at 86.

The Court finds that Dean Cohlmia provided more than enough process to satisfy the Fourteenth Amendment when he dismissed Dr. Patterson from the College of Dentistry because of his academic performance. Dr. Patterson does not allege that the university failed to provide adequate notice of his poor academic performance, but claims that "Plaintiff was not afforded the opportunity to be heard by an impartial and disinterested tribunal in an adjucative process where the procedures employed are appropriate for his interests at stake." Doc. No. 1, ¶ 85. The Supreme Court explained in *Horowitz* that a dismissal made for academic reasons may be "useless or harmful in finding out the truth as to scholarship." *Horowitz*, 435 U.S. at 90 (citing *Barnard v. Inhabitants of Shelburne,* 216 Mass. 19, 23 (Mass. 1913)). Dr. Patterson's dismissal resulted from his academic performance rather than from any specific instances of misconduct, and the procedural due process clause does not require the same level of protections for academic dismissals as it does for dismissals based on misconduct.

Nonetheless, Dean Cohlmia still provided adequate process for dismissal based on academic performance. Dr. Patterson received a grade hearing in front of the Dean's Council on January 4, 2018, and a hearing in front of the PDAC thereafter. Doc. No. 1, ¶¶ 52, 54. He was given adequate notice in advance of the hearings. Thus, Dr. Patterson fails to state a claim for a violation of procedural due process against Dean Cohlmia and the claim is dismissed.

## C. Equal Protection

Dr. Patterson also argues that Dean Cohlmia violated his rights under the Equal Protection Clause. Specifically, he alleges that he belongs to a "class of one," and was intentionally treated differently from others similarly situated. Doc. No. 15, p. 16. Dean Cohlmia argues that Dr. Patterson relies on conclusory allegations and fails to allege that he was treated differently from similarly situated students. Doc. No. 19, p. 9.

"The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 435 (1985)).   The Supreme Court has explained that "[t]he purpose of the […] clause […] is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination…", which includes claims brought by a "class of one." *Sioux City Bridge Co. v. Dakota County*., 260 U.S. 441, 443, 445 (1923) (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)). Further, in order to show intentional and arbitrary discrimination, a plaintiff must allege "that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Marino v. Mayger*, 118 F. App'x 393, 400 (10th Cir. 2004) (explaining that the Plaintiff must show similarly situated citizens were treated differently without a rational basis, and that allegations of "animus or spite" alone are insufficient to state a claim.).

As discussed above, the only timely claim alleged by Dr. Patterson against Dean Cohlmia is Dean Cohlmia's dismissal decision on April 18, 2018. Doc. No. 1, ¶ 55. In the dismissal allegations, Dr. Patterson does not describe any similarly situated students who were not dismissed after failing a course more than once. Conversely, Dr. Patterson pleads that Dean Cohlmia's dismissal decision was the result of a "bias or animus" towards him. Doc. No. 1, ¶ 85. However, pursuant to the Tenth Circuit's holding in *Marino*, allegations of "animus or spite" alone do not sufficiently state an equal protection claim. 118 F. App'x at 400. Dr. Patterson also alleges that Dean Cohlmia enforced policies in a "discriminatory, arbitrary, and capricious manner." Doc. No. 1, ¶ 67. Such allegations are conclusory, and the Court may not consider conclusory allegations without specific, underlying factual allegations. *Hall*, 935 F.2d at 1109–10. Thus, Dr. Patterson fails to state a claim for a violation of equal protection, and therefore his claim is dismissed.[9]

### D.  Promissory Estoppel

A valid claim for promissory estoppel requires the plaintiff to allege that the defendant: i) made a material misrepresentation, ii) known to be false at the time made, iii) with specific intent that a party would rely on it, and iv) with reliance resulting in damage. *Barber v. Barber*, 2003 OK 52, ¶ 7, 77 P.3d 576, 579. Further, "[p]romissory estoppel is a doctrine … whereby a person who reasonably relies to his detriment on another's promise is given by law the benefit of a contract wherein an agreement did not come to fruition." *Bickerstaff v. Gregston*, 604 P.2d 382, 384 (Okla. Civ. App. 1979).

---

[9] In light of the Court's disposition on the constitutional violation, the Court need not address the "clearly established" prong of the qualified immunity analysis.

Dr. Patterson argues that Dean Cohlmia's false representations—namely, promising to remove grade encumbrances from Dr. Patterson's record—during dismissal appeal discussions induced Dr. Patterson to sign an Appeal Waiver Agreement, and that Dean Cohlmia never removed the encumbrances. Doc. No. 1, ¶¶ 110–11. He further alleges that Dean Cohlmia "knew or reasonably should have known that Plaintiff would rely on his representations." *Id.* ¶ 112. He claims he is entitled to relief because he subsequently relied on the promise when he signed the Appeal Waiver Agreement and applied to different dental schools, incurring damages in "paid tuition and fees, lost wages, value of professional service and reputation damages." *Id.* ¶ 111, 114**.**

Dean Cohlmia argues that promissory estoppel is inapplicable because the Appeal Waiver Agreement covers "any contract dispute Plaintiff may have." Doc. No. 9, p. 18. Further, he argues that under *Bickerstaff*, "where an agreement has been reached [,] detrimental reliance on the contract can create no greater rights than one possesses under the contract," (Doc. No. 9, p. 17) (quoting *Bickerstaff*, 604 P.2d at 384), and that because the Appeal Waiver Agreement covered the agreement between he and Dr. Patterson, the claim should be dismissed.

Construing the facts in the light most favorable to Dr. Patterson at the motion to dismiss stage, the Court takes as true Dr. Patterson's allegations, and assumes that the Appeal Waiver Agreement did not cover the entirety of the agreement between Dr. Patterson and Dean Cohlmia. Rather, the promise to have the grade encumbrances removed from his academic record "was the very reason" Dr. Patterson entered into the Appeal Waiver Agreement. Doc. No. 15, p. 19.

23

Thus, Dr. Patterson meets the elements of promissory estoppel and states a claim against Dean Cohlmia. Therefore, Dean Cohlmia's motion to dismiss Dr. Patterson's promissory estoppel/detrimental reliance claim is denied.

## **CONCLUSION**

For the reasons set forth above, Defendant University, Defendant Haney, and Defendant Hughes' motions to dismiss are GRANTED in their entireties. Defendant Cohlmia's motion to dismiss is DENIED as to Plaintiff's § 1983 substantive due process and promissory estoppel/detrimental reliance claims, but in all other respects, Defendant Cohlmia's motion to dismiss is GRANTED.

**IT IS SO ORDERED** this 23rd day of September 2020.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE