## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

RANDY BLAKE PATTERSON, M.D. )
                                        )
           **Plaintiff,**      )
                                          )
**v.**                                )      **Case No. CIV-20-355-R**
                                          )
**RAYMOND A. COHLMIA, D.D.S.,**  )
                                        )
         **Defendant.**     )

## ORDER

Before the Court is the Motion for Sanctions filed by Defendant Raymond Cohlmia, D.D.S. (Doc. No. 82). Plaintiff filed a response in opposition to the motion (Doc. No. 93), Defendant filed a Reply in support of his position (Doc. No. 99), and Plaintiff, with leave of Court, filed a Surreply. (Doc. No. 114). Having considered the parties' submissions, the Court finds as follows.

This action arises out of the decision by Defendant Cohlmia to remove Plaintiff Patterson from the dental school program at the University of Oklahoma Health Sciences Center. Plaintiff contends the decision violated his substantive due process rights and further that Defendant Cohlmia is liable for promissory estoppel based on an agreement he allegedly made with Plaintiff at the time of Plaintiff's withdrawal from the program. Defendant contends dismissal is an appropriate sanction for Plaintiff's actions in this litigation, citing the Court's inherent authority to dismiss an action with prejudice due to abusive litigation tactics during discovery as well as Rule 37 of the Federal Rules of Civil Procedure.

Courts enjoy "broad inherent power to sanction misconduct and abuse of the judicial process." *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015). "A district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules." *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir.2002). However, dismissal is "an extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). The Court considers the following factors when considering whether dismissal is an appropriate sanction: (1) the degree of actual prejudice to the opposing party; (2) the degree of interference with the judicial process; (3) the litigant's culpability; (4) whether the litigant was warned in advance that dismissal was a likely sanction; and (5) whether a lesser sanction would be effective. *Id.* at 921. Defendant must demonstrate Plaintiff's sanctionable conduct by clear and convincing evidence. *See Xyngular v. Schenkel*, 890 F.3d 868, 873-74 (10th Cir. 2018). The Court finds that Defendant fails to meet his burden.

With regard to the Complaint, Defendant argues that Plaintiff made misrepresentations regarding the experience of the course instructor at the Bench Prep Review course Plaintiff completed at UCLA in April 2017, citing paragraphs 41, 42, 47, and 49. Although Defendant contends the allegations were designed to mislead the Court, the Court has no misgivings, nor did it misinterpret the factual allegations cited by Defendant in support of his request for dismissal.[1] Plaintiff did not allege that he applied

---

[1] The Court cited Plaintiff's allegations in its Order on Defendants' Motion to Dismiss. The Court merely accepted as true well-pled factual allegations; it did not conclude that Plaintiff's work at UCLA was a proxy for completion of the deficient lab work at the University of Oklahoma College of Dentistry. Rather, the Court's decision at the dismissal

for acceptance as a student at the UCLA College of Dentistry or indicate that he took a course other than a Bench Prep Review at UCLA. Additionally, it does not appear that Plaintiff made a false allegation in paragraph 48 of the Complaint, because he did request, albeit unsuccessfully, that his lab work from the course at UCLA serve as proxy for his unsuccessful removable prosthodontics exam at the University of Oklahoma.[2] The Court finds nothing in the Complaint that constitutes clear and convincing evidence to support imposition of a terminating sanction.

Defendant next complains about misrepresentations allegedly contained in Plaintiff's response to Defendant Cohlmia's initial motion for summary judgment, which Defendant withdrew prior to the Court's consideration thereof. Defendant's withdrawal of that motion prohibits a finding that any alleged misrepresentation in Plaintiff's response was material to the outcome of this litigation or that it misled the Court as argued in Defendant's motion. (Doc. No. 82 at 12). Furthermore, as addressed more fully below, Plaintiff's declaration about which Defendant complains contains certain statements by Plaintiff regarding the course in which he enrolled at the UCLA campus. There is no confusion on the part of the Court, nor does it appear from the Court's review of the allegedly false statements, that Plaintiff made any misrepresentations, because he did not allege in the Complaint or the cited portion of the declaration that he had enrolled as a dental student at UCLA. Dean Kresbach's testimony that Plaintiff did not have an

---

stage was limited to whether Plaintiff had pled sufficient facts to allege a plausible claim, which relied generally on his dismissal from the program.

[2] Defendant in essence argues this was a preposterous request, which is probably why he denied it. Plaintiff's inclusion of the facts regarding the unsuccessful request, however, does not provide a basis for sanctioning Plaintiff by dismissing his case.

instructor at UCLA from an approved course in their curriculum does not directly contradict Plaintiff's representations. Furthermore, Plaintiff's deposition testimony made clear the nature of the course in which he enrolled. Accordingly, this argument provides no basis for dismissal of Plaintiff's claims.

Citing to *Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174 (10th Cir. 2009), Defendant argues that the analysis therein mirrors the issues in this case. The Court disagrees. *Garcia* involved text messages fabricated by the plaintiff and submitted to the court as evidence in support of her claims. Here, Defendant has not accused Plaintiff of creating evidence or otherwise altering exhibits. Rather, it appears that some of the alleged confusion regarding the course Plaintiff took on the UCLA campus is derived from the use of "loose" language in certain deposition questions.[3] Although Defendant contends that in light of Plaintiff's alleged misrepresentations regarding the course it was necessary to depose the dean of the College of Dentistry, the Court has not been presented with any evidence that Plaintiff ever represented that he enrolled as a dental student at UCLA. Rather, Plaintiff correctly testified that he took a course at UCLA. He alleged in the Complaint that the course was a "bench review course," which it was. Plaintiff's deposition testimony presented to the Court does not imply that Plaintiff believed or sought to convince anyone that he was a dental student at UCLA.[4] Plaintiff's subsequent

---

[3] In Patterson's June 7, 2022 deposition defense counsel asked:
Q: How did you do in that course at UCLA?
A: I completed the denture wax-up to a clinically acceptable level, according to the course instructor, so satisfactory, I would assume.
(Doc. No. 82-3 at 4).

[4] In Patterson's June 7, 2022 deposition defense counsel inquired:
Q: Do you think that UCLA would approve that work product?

unsuccessful attempt to use the model from that course as a substitute for his failing grade on the practicum portion of RP7125 is not inherently suspect nor did Defendant violate Plaintiff's rights in declining to utilize the model in that manner. Doc. No. 22, Order on Motions to Dismiss at 18("[T]he only issue is whether Dean Cohlmia's decision to terminate Dr. Patterson, despite the 4-1 PDAC vote to retain him, violates his substantive due process rights.").

Defendant next complains that Plaintiff withheld a "UCLA email with attachments" and a recording of a conversation between Plaintiff and Drs. Haney and Hughes. The ULCA email with attachments is a January 17, 2017 e-mail from Tina Cody, an employee of the UCLA College of Dentistry Continuing Dental Education department that included two attachments. One, a letter on UCLA School of Dentistry letterhead that indicates it originated from Continuing Dental Education. The letter thanks Mr. Patterson for "enrolling in the UCLA program listed below". Doc. No. 82-11.[5] The Course is identified as "Pre-Dental Quadrant Denture Course" and indicates the balance due for the two-day course taught over a weekend. The second page is a form indicating that payment for the

---

A: He - - he didn't declare that it was clinically unacceptable, so . . .
Q: I'm not talking about him. I'm talking about UCLA.
A: **I've not been a student in their program**, so I can't speak to their standards of scholarship?
Q: **Earlier, did you say that you're enrolled at UCLA?**
A: **I enrolled in a course that was taught there, but I wasn't a degree-seeking student. It was just a – I would liken it to a continuing education course. It was very similar.**
**It was taught at UCLA by an individual who – I believe it was adjunct faculty, but the course was through Venmar (sic) Solutions, and it used UCLA's clinic and lab.**
(Doc. No. 82-3 at 11)(emphasis added).
[5] Defendant's Request for Production No. 20 asked for all documents and correspondence from UCLA, among other institutions. In response Plaintiff indicated he had previously produced all documents. The email was not produced until June 30, 2022, after Defendant had deposed Plaintiff, Dean Krebsbach, and had sat for deposition himself. The information contained in the documents, however, mirrors information provided by Plaintiff in his deposition as set forth above. Accordingly, the Court is hard-pressed to discern how Defendant was prejudiced by the failure to timely provide the document.

supply kit should be made to Mr. Mark Hunt, instructor for the course, who is affiliated with Vinmar Solutions. The final page provided parking instructions for the UCLA campus. Defendant argues it is obvious why Plaintiff withheld this production because "there is no way Plaintiff or anyone believed the course was a proxy for an accredited post-graduate dental course." (Doc. No. 82 at 16). The Court previously concluded, however, that Plaintiff could not rely on Defendant's decision not to accept the ULCA course as a proxy for RP 7125 as a basis for his substantive due process claim, although it might be evidence of his motivations. (Doc. No. 22 at 18).[6] Additionally, as noted above, nothing presented to the Court, including the Complaint and Plaintiff's deposition, provides clear and convincing evidence that Plaintiff attempted to convince the Court that he actually enrolled as a student at the UCLA College of Dentistry.[7]

Defendant also provides a transcript of a recording made by Plaintiff during a January 4, 2018 meeting between Plaintiff, Dean Haney and Rebecca Hughes. Plaintiff asserts that he believed the recording was provided by prior counsel.[8]

---

[6] Defendant makes an argument that the documents reveal an attempt by Plaintiff to mislead Dean Krebsbach of the UCLA College of Dentistry because in his deposition Plaintiff's counsel asked whether Dr. Krebsbach had any information to "dispute the fact that Randy Blake Patterson paid $5,000 for the course?" (Doc. No. 82-4 at 6). The documentation for the course indicates a cost far below that amount. The question, however, appears irrelevant to the outcome of this litigation or its relevance is not yet apparent.

[7] An April 23, 2017 letter from Mark Hunt of Vinmar Solutions to the University of Oklahoma College of Dentistry indicated that Mr. Hunt observed Mr. Patterson in his capacity as instructor and private tutor for Vinmar Solutions. It indicates that the Complete Denture Course was a 2-day course of lab instruction and benchwork. The letter indicates that a two-hour practical exam was administrated on the second day.  Mr. Hunt wrote that Plaintiff "fabricated new wax rims, reset the teeth, and completed the entire denture setup to a Clinically Acceptable level, in addition to all required labwork in my course." (Doc. No. 82-2, p. 13).

[8] To the extent Defendant complains about pre-litigation conduct by Dr. Patterson, such conduct can provide a basis for dismissal of claims. However, the Court concludes that the alleged misstatements in the course of Plaintiff's due process hearings at the College of Dentistry are not sufficient to support Defendant's sanction request.

In the final argument in the motion Defendant asserts that Plaintiff's propensity for misrepresentation provides a basis for dismissal. Defendant argues that Plaintiff misled his damages expert, Dr. James Horrell, leading Dr. Horrell to withdraw his expert report mid-deposition. The testimony provided indicates that Dr. Horrell believed he was misled by Dr Patterson. Notably missing, however, is the substance of any alleged misstatements or omissions made by Plaintiff to Dr Horrell. If Dr. Horrell no longer intends to testify on Plaintiff's behalf that inures to Dr. Cohlmia's benefit should this case proceed to trial. Defendant further argues that Plaintiff misrepresented that he was admitted to other dental schools, Penn State University and Columbia University, when in reality he was waitlisted at Columbia. Finally, Defendant argues that, at a grade appeal hearing, before this lawsuit was filed, Plaintiff represented the existence of an affidavit from UCLA indicating he had completed a denture course in April 2017, but that no such affidavit has been produced. Defendant cites no caselaw in support of this particular argument, and to the undersigned it appears that the absence of the affidavit and the alleged misrepresentation regarding admissions to the dentistry program at Columbia University provides grounds for vigorous cross examination of Plaintiff rather than dismissal of the action with prejudice.

In his Reply Defendant addresses communication between Plaintiff and Sam Lloyd that Plaintiff failed to timely disclose in response to a March 28, 2022 Request for Production. Counsel for Plaintiff contends that it was unclear whether the text messages fell into the category requested, which was "correspondence." Counsel contends that when specifically asked for e-mails and text messages he produced the disputed documents to defense counsel prior to the discovery deadline. Defendant further complains that the text

messages indicate some malfeasance, first that Plaintiff indicated Dr. Lloyd could be paid and second, that certain of his testimony and averments in his affidavit are not the result of personal knowledge, contrary to his representations therein. As with the other issues raised by Defendant's motion, the failure to provide these communications in response to the initial discovery request does not provide a basis for dismissal of this action. Although Plaintiff indicated in a text message that Dr. Lloyd could be paid for his testimony as an expert, Dr. Lloyd is not identified as an expert in this case and the Court has little doubt that Plaintiff's counsel is aware of the limits on providing payment for lay witness testimony. *See e.g.* Okla. Stat. tit. 5, App. 3-A, § 3.4(b) and cmt. 3. As to the representations in the affidavit and whether they were the result of Lloyd's personal knowledge, that issue can be explored via appropriate lines of inquiry and does not warrant dismissal.

Considering the above in light of the *Ehrenhaus* factors, the Court finds that Defendant has failed to establish that terminal sanctions are appropriate. First, as to the degree of actual prejudice, any prejudice from the Court's perspective does not rise to the level asserted by Defendant. The Court finds that the interference with the judicial process has been limited. The litigant bears some culpability, although it appears that certain issues, for example the failure to disclose the recording of his meeting with Drs. Haney and Hughes, was the result of inadvertence. The Court, having not addressed sanctions before, has not warned Plaintiff that dismissal with prejudice was a possible or a likely sanction. Finally, although Defendant contends that no lesser sanction would be effective, the Court believes such a sanction, if warranted could be crafted. However, the Court finds no sanction necessary. The Court further notes that it reviewed the cases cited by Defendant

and although none purports to establish a baseline for dismissal as a sanction, the cases present examples of sanctionable conduct far more egregious than that presented here.[9] In short, the Court declines to exercise its discretion to impose sanctions on Plaintiff by dismissing this case with or without prejudice.

For the reasons set forth herein, Defendant's Motion for Sanctions is DENIED.

**IT IS SO ORDERED** this 26th day of September 2022.

DAVID L. RUSSELL
**UNITED STATES DISTRICT JUDGE**

---

[9] The Court will not address each case individually and has already distinguished *Garcia* above. However, in *Wood v. Cendant Corp.,* No. 03-cv-298, 2006 WL 8457160, * 2 (N.D.Okla. July 20, 2006)*,* the supplemental discovery was provided AFTER trial had started, clearly not the case here. In *Fish v. Kobach*, 320 F.R.D 566, 572 (D. Kan. June 23, 2017), the court imposed a $1000.00 sanction premised on the Secretary of State's word play in response to a discovery request, dismissal or default was never at issue. In *Anheuser-Busch v. Natural Bev. Distributor,* 69 F.3d 337 (9th Cir. 1995), the defendant represented under oath that all of her documents had been destroyed in a warehouse fire despite knowing that agents had seized eight filing cabinets and seven cardboard boxes filled with documents that were subject to discovery. Defendant additionally violated a number of orders by the court regarding negative publicity. As a result of her actions her counter claim was dismissed. These cases provide little guidance, especially in light of the fact that it appears to the undersigned that some of the confusion herein was unwarranted, notably as to whether Plaintiff misrepresented that he enrolled at UCLA College of Dentistry.